# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

PATRICK SHANE CARMODY,  )
           ) Case No. 1:26-cv-125
   *Plaintiff*,     )
           ) Judge Travis R. McDonough
v.           )
           ) Magistrate Judge Chrisopher H. Steger
TENNESSEE DEPARTMENT OF  )
CORRECTION, FRANK STRADA, LEE )
DOTSON, DR. GAIL JOHNSON, JOHN )
DOE 1, MICHAEL GENOVESE, BRETT )
COBBLE, SHANNON GREEN, JOHN  )
DOE 2, CPL. BLANKENSHIP, OFF.  )
FARLEY, CENTURION OF    )
TENNESSEE, LLC, STEVEN   )
WHEELER, JOHN DOE 3, DR. NATE  )
TOLLET, and JANE DOE,    )
           )
   *Defendants*.    )

## <u>MEMORANDUM OPINION</u>

Plaintiff, a Tennessee Department of Correction ("TDOC") prisoner housed in the Bledsoe County Correctional Complex ("BCCX"), filed a pro se complaint for violation of 42 U.S.C. § 1983 in which he requests appointment of counsel and asserts that he was injured in two TDOC transportation incidents and did not receive appropriate medical care for his resulting injuries (Doc. 1). This complaint is now before the Court for screening. Also before the Court are Plaintiff's filings regarding proceeding *in forma pauperis* herein (Docs. 4, 6, 9, 10) and motion for injunctive relief, including appointment of counsel (Doc. 11). For the reasons set forth below, the Court will **GRANT** Plaintiff leave to proceed *in forma pauperis*, **DENY** his motion for injunctive relief (Doc. 11), and **DENY** his requests for appointment of counsel. Also, as Plaintiff's complaint does not allow the Court to plausibly infer that any Defendant violated his constitutional rights, this action will be **DISMISSED**.

## I.      FILING FEE

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). Plaintiff's documents regarding proceeding *in forma pauperis* (Docs. 4, 6, 9, 10) demonstrate that he cannot pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, Plaintiff's motions seeking this relief (Docs. 6, 9) are **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee, 37402, twenty percent (20%) of his preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the PLRA's requirements for payment of the filing fee.

## II.      MOTION FOR INJUNCTIVE RELIEF

In his motion for injunctive relief, Plaintiff states that he was placed in "the hole" without good cause because he filed a document related to this action, and this housing kept him from accessing the legal library to file motions in this case and prevented him from accessing "his criminal post conviction presentations" (Doc. 11, at 2). Specifically, Plaintiff states that on approximately April 16, 2026, prison officials that Plaintiff refers to as "Respondents" placed him in handcuffs and moved him into a disciplinary unit for ten days due to him filing a notice of

2

his intent to file this action, which he states caused him to file this action without his *in forma pauperis documents* and therefore could have caused dismissal of this action (*id.*). Plaintiff also claims that on June 3, 2026, a TDOC official issued a memorandum regarding legal copies stating that, where policy does not require prison officials to provide an item, prisoners must provide a "stamped paid" withdrawal slip to get the item, including documents, which Plaintiff asserts violates a TDOC policy that requires prison officials to provide "photocopies required by the court" to indigent inmates (*id.* at 3). Based on these assertions, Plaintiff requests an injunction preventing him from being moved to BCCX Site 1, prohibiting Plaintiff from being denied "photocopies" of legal documents without paying for them, and appointing him counsel (*id.* at 3–4). Because Plaintiff filed the instant motion before any Defendant has been served, the Court treats it as a motion for a temporary restraining order ("TRO").[1] *See* Fed. R. Civ. P. 65(b).

In determining whether to grant a request for preliminary injunctive relief, courts balance four factors: (1) whether the plaintiff "has shown a strong likelihood of success on the merits"; (2) whether the plaintiff will suffer irreparable injury in the absence of an injunction; (3) whether the injunction will cause substantial harm to others; and (4) whether the injunction would serve the public interest. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted). Injunctive relief is "an extraordinary remedy never awarded as of right." *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Such relief "should be

---

[1] A preliminary injunction requires notice to the adverse party, while the purpose of a TRO is to preserve the status quo until an adversarial hearing may be held for a preliminary injunction. Fed. R. Civ. P. 65(b)(3); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 438–39 (1974). Thus, as Plaintiff filed his motion for injunctive relief prior to service of process on any Defendant, the Court construes it as a motion for a TRO. Fed. R. Civ. P. 65(a), (b). But the Court notes that the factors to be considered in determining whether a TRO or preliminary injunction should issue are the same. *See, e.g., Workman v. Bredesen*, 486 F.3d 896, 904–05 (6th Cir. 2007).

3

granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573 (citations omitted).

First, the record does not suggest that Plaintiff has a strong likelihood of success on the merits in this action. Instead, as set forth below, this action will be dismissed because the complaint fails to allege a plausible violation of Plaintiff's constitutional rights.

As to the second factor, Plaintiff has not established that he will suffer irreparable injury without the requested TRO. First, Plaintiff states that his placement in "the hole" could have caused the Court to dismiss this action because he was unable to file the required financial documents to proceed *in forma pauperis* with his complaint. But the Court did not dismiss this action based on this omission and has now granted Plaintiff leave to proceed *in forma pauperis*. Thus, this housing placement did not cause Plaintiff any harm in this lawsuit. Also, while Plaintiff states that he could not access his post-conviction filings while in this housing placement, nothing in the complaint indicates that Plaintiff's temporary lack of access to these legal documents is causing Plaintiff irreparable harm that a TRO will now remedy.[2]

Also, while Plaintiff seeks injunctive relief based on his speculation that he will be unable to get copies of legal documents without paying for them due to a TDOC memorandum,

---

[2] Moreover, to the extent that Plaintiff intended to state a claim for retaliation based on his assertion that unspecified individuals he refers to as "Respondents" placed him in the disciplinary unit for ten days due to him filing a notice in this action, this allegation does not state a plausible retaliation claim. Specifically, Plaintiff does not set forth any facts to support a plausible inference that a named Defendant placed him in "the hole" because he filed a document related to this lawsuit, and this allegation is therefore conclusory and fails to state a plausible retaliation claim. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (providing that a § 1983 retaliation claim requires Plaintiff to plausibly allege that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."); *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

4

the allegations of his motion do not support this assertion or demonstrate that he will suffer irreparable harm. Specifically, Plaintiff's motion indicates in relevant part that (1) a TDOC policy requires prison officials to provide "photocopies required by the court" to indigent inmates, and (2) a recent memorandum states that prisoners will have to prepay for items, including documents, where prison policy does not require prison officials to provide the item (*see* Doc. 11, at 3). But a logical reading of this memorandum and policy together indicates that prison officials will still provide legal copies to indigent inmates in accordance with the TDOC policy. And Plaintiff does not allege that any prison official has denied him legal copies pursuant to this memorandum.

Also, while Plaintiff requests that the Court enter an injunction preventing prison officials from moving him to BCCX Site 1, Plaintiff does not set forth facts suggesting that it is likely he will be moved to this location, or that any such housing move would cause him irreparable harm. As such, the second factor also weighs against the Court granting Plaintiff injunctive relief.

As to the third factor, nothing in the record suggests that granting Plaintiff the requested TRO would cause substantial harm to others.

As to the fourth factor, district court intervention in prison operations without a compelling reason is against public policy. *Glover v. Johnson*, 855 F.2d 277, 285–87 (6th Cir. 1988) (setting forth public policy concerns regarding court interference with jail administration and instructing that courts should not "attempt to administer any portion of a state correctional system program except in the most compelling situations"). Plaintiff has not set forth a compelling reason for the Court to grant him the requested TRO.

Accordingly, Plaintiff's motion for injunctive relief (s*ee* Doc. 11) is **DENIED**.

III.     **APPOINTMENT OF COUNSEL**

As set forth above, in his motion for TRO, Plaintiff also seeks appointment of counsel (*id.* at 3–4). Additionally, with his complaint, Plaintiff filed a document seeking appointment of counsel based on his assertion that, in a prior case, Defendants were "complicit" in denying Plaintiff access to courts and obstructing Plaintiff's ability to file documents (Doc. 1, at 14).

"Appointment of counsel in a civil case is not a constitutional right[,]" but a "privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F. 2d 601, 605–06 (6th Cir. 1993) (internal citations omitted). In determining whether "exceptional circumstances" exist, the Court considers "the complexity of the case and the ability of the plaintiff to represent himself." *Cavin v. Michigan Dep't of Corrs.*, 927 F.3d 455, 461 (6th Cir. 2019) (citing *Lavado*, 992 F.2d 601).

It is apparent from his filings that Plaintiff is capable of adequately litigating his claims regarding his injuries during transport and the subsequent denial of appropriate medical care. Moreover, these are typical prisoner claims that are not legally or factually complex.

Accordingly, Plaintiff's requests for appointment of counsel are **DENIED**.

## IV. COMPLAINT SCREENING

### A. Standard

District courts must screen prisoner complaints and dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim [at screening] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review, a prisoner

6

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

**B.      Allegations**

On May 19, 2025, Defendant Farley placed Plaintiff in a wheelchair-accessible transport van without buckling Plaintiff into a seatbelt, which Plaintiff states was due to a "well-established and well-known common practice, or unwritten policy and procedure" at BCCX (Doc. 1, at 8). The van later traveled a "switchback" road with a speed limit of fifteen miles per hour, and Plaintiff was "forcibly ejected from the rear seat into the metal wall directly behind the front driver's compartment and rendered unconscious" (*id.* at 9). When Plaintiff regained consciousness, two TDOC officers were attempting to place him back into a seat until Plaintiff asked them not to do so because it was exacerbating his injuries, and Plaintiff also heard officers discussing the possibility of losing their jobs due to not buckling him up (*id.*). The TDOC officers then decided to drive Plaintiff to the hospital (*id.*). During the drive to the hospital, the officers drove over train tracks, and this caused Plaintiff to be lifted into the air and slammed back into the floor in a manner that caused Plaintiff "further, and even greater pain" (*id.*). Plaintiff then arrived at the hospital and was seen by medical staff (*id.*).

7

Since these transportation incidents occurred, Plaintiff has had difficulty standing on his own and has been unable to walk (*id.* at 10). Also, after these incidents, Defendant Tollet told Plaintiff that he would receive an MRI and medical treatment from Centurion (*id.*).

Plaintiff waited "several months" to receive the MRI and its results, which confirmed he had suffered new injuries and worsening of injuries to his "spinal vertebrae" (*id.*). An unspecified person told Plaintiff he would receive a consultation with a neurosurgeon and would receive adequate treatment and care, but when Plaintiff met with neurosurgeon Dr. Li, he told Plaintiff he did not have the correct MRI results and therefore could not proceed with the consultation (*id.*). Plaintiff then claims that he has not received "any medical treatment and care in any capacity" since sustaining his injuries (*id.*).

Plaintiff attached various documents to his complaint (*id.* at 15–70). While some of these documents contain allegations that are relevant to the complaint allegations, many of these documents—including numerous documents titled "Certificate of Summons Pursuant to Fed. R. Civ. P., Rule 4" and disciplinary documents and grievances regarding incidents that are unrelated to the incidents in the complaint and involve allegations against prison officials who are not named Defendants herein—do not (*id.*). Accordingly, the Court will now summarize only the attachments to the complaint that are relevant to the complaint allegations.

In a grievance attached to his complaint, Plaintiff asserts that on May 17, 2025, Defendant Blankenship and Defendant Farley failed to buckle him in a seatbelt, and Defendant Blankenship was "exceeding the speed limit" when Plaintiff was ejected from his seat (*id.* at 15–16).

In a November 17, 2025 letter from Plaintiff to Dr. Li, Plaintiff opines that his MRIs from 2023 and 2025 show a " 'significant' amount of differentiation," and he therefore requests

that Dr. Li provide a "substantive comparative analysis" and investigation of the differences (*id.* at 20–21).

In a November 15, 2025 letter from Plaintiff to Defendant AWT Green, Plaintiff states Defendant Centurion failed to provide Dr. Li with a correct MRI and therefore delayed Plaintiff's surgery, and Plaintiff requests assistance with this issue (*id.* at 50).

Also, in an August 25, 2025 letter to Defendant AWT Green from Plaintiff, Plaintiff states that unspecified individuals took his "heavy duty wheelchair," which he required because he weighed over 250 pounds (*id.* at 51).  According to Plaintiff, prison officials took this wheelchair even though he had to traverse an area of the prison with potholes and told prison officials that other prisoners who weighed about 170 pounds had similar wheelchairs and walked behind them, rather than using them (*id.*).  Plaintiff claims that using the "inadequate" wheelchair worsened his back injuries and caused him other injuries due to rough terrain near his housing unit, and Plaintiff therefore requested a different housing placement (*id.*).  In another document attached to the complaint and dated September 9, 2025, Defendant AWT Green appears to have responded to Plaintiff's letter by stating that Plaintiff's wheelchair was replaced because he weighed only "5 pounds over what is required for that particular wheelchair" (*id.* at 52).

Plaintiff has sued the TDOC, TDOC Commissioner Frank Strada, Assistant TDOC Commissioner Lee Dotson, Medical Director Dr. Gail Johnson, Health Administrator John Doe, "Reg. Warden Michael Genovese," Warden Brett Cobble, AWT Shannon Green, Sgt. of Transportation John Doe 2, Cpl. Blankenship, "Off. Farley," Centurion of Tennessee, Centurion CEO Steven Wheeler, "Medical Supvr. SNPD John Doe," Dr. Nate Tollet, and Jane Doe Nurse 1

9

(*id.* at 1, 4–7).  Plaintiff has sued Defendants in their individual and official capacities and seeks declaratory relief and monetary damages (*id.* at 4–7, 11–13).

### C.      Analysis

The Court will address Plaintiff's claims against the entity Defendants and the individual Defendants in their official capacities before addressing the claims against the individual Defendants in their individual capacities.

#### 1.      Entity and Official Capacity Claims

Plaintiff has sued TDOC and Centurion.  However, TDOC is not an entity subject to suit under § 1983.  *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding that TDOC is not a "person" within meaning of 1983).  Also, nothing in the complaint allows the Court to plausibly infer that any incident therein was due to a custom or policy of Centurion, such that this Defendant could be liable under § 1983.  *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (holding a plaintiff must allege "a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights).

Moreover, Plaintiff's claims against the individual TDOC and Centurion Defendants in their official capacities are actually against TDOC or Centurion, respectively.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").  As such, these claims are also subject to dismissal.

Accordingly, TDOC and Centurion and Plaintiff's claims against the individual Defendants in their official capacities are **DISMISSED**.

#### 2.      Individual Capacity Claims

##### A.      Strada, Dotson, Johnson, Genovese, Cobble, and Wheeler

Plaintiff's complaint does not allege that Defendants Strada, Dotson, Johnson, Genovese, Cobble, or Wheeler were personally involved in any incident in his complaint. As such, it fails to state a plausible claim for § 1983 relief against them. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted); *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–57 (1978))).

Moreover, to the extent that Plaintiff seeks to hold these Defendants liable under § 1983 for the acts of other prison employees based on their supervisory positions, that is not a theory under which these Defendants may be liable under §1983. *Iqbal*, 556 U.S. at 676 (2009) ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"); *Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 487–88 (6th Cir. 2020) (providing that "at minimum a plaintiff must show that a supervisory official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate" in order for the supervisory official to be liable for a subordinate's acts under § 1983) (citation modified).

Accordingly, these Defendants are **DISMISSED**.

### B.      Farley and Blankenship

Plaintiff's only allegation as to Defendants Farley and Blankenship are that they failed to buckle Plaintiff into a seatbelt, and Defendant Blankenship was driving over the speed limit when Plaintiff was ejected from his seat in the wheelchair-accessible van. But many people

11

drive over the speed limit and do not wear seatbelts. Moreover, nothing in the complaint suggests that either of these Defendants intentionally did not buckle Plaintiff into his seatbelt or recklessly drove over the speed limit. As such, these allegations do not allow the Court to plausibly infer that these Defendants ignored a "substantial risk" to Plaintiff in a manner that rose to the level of a constitutional violation. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("[C]onduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety."); *Daily v. CCA-WCFA Whiteville Transp. Officers*, No. 3:18-CV-0146, 2018 WL 1583980, at \*5 (M.D. Tenn. Apr. 2, 2018) (collecting cases); *Groce v. Smith*, No. 3:15-CV-0823, 2015 WL 4743818, at \*3 (M.D. Tenn. Aug. 10, 2015) (collecting cases). Instead, Plaintiff has alleged, at most, negligent conduct, which is not a constitutional violation. *See, e.g., Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 348 (6th Cir. 1994) ("[I]t is now firmly settled that injury caused by negligence does not constitute a 'deprivation' of any constitutionally protected interest.").

As such, these Defendants are **DISMISSED**.

### C. AWT Green

Plaintiff's only allegations as to Defendant AWT Green are that Plaintiff asked this Defendant for assistance with getting the correct MRI to Dr. Li and sent this Defendant a letter telling him about prison officials taking his larger wheelchair and requesting that this Defendant put him in a different housing placement, to which this Defendant responded by sending Plaintiff a document telling him why the larger wheelchair was taken. But these allegations do not allow the Court to plausibly infer that this Defendant was aware of and deliberately indifferent to Plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (providing that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and

12

wanton infliction of pain" that violates the Eighth Amendment) (citation modified); *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994) (providing that the subjective prong of a deliberate indifference claim requires a plaintiff to show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Specifically, while attachments to Plaintiff's complaint indicate that Defendant AWT Green responded to Plaintiff's letter requesting assistance with a wheelchair and/or his housing placement by sending Plaintiff a document telling him why unspecified individuals took Plaintiff's larger wheelchair, no facts in the complaint suggest that Defendant AWT Green deliberately took Plaintiff's larger wheelchair despite knowing that doing so would subject Plaintiff to an excessive risk of harm. And to the extent that Plaintiff seeks § 1983 relief based on the assertion that Defendant AWT did not remedy his requests for assistance regarding the wheelchair, his housing placement, and the MRI, this does not rise to the level of a constitutional violation. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and failure to respond to or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983 and holding "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act") (citation modified).

Accordingly, Defendant AWT Green is also **DISMISSED**.

### D. Tollet

Plaintiff's only allegation as to Defendant Tollet is that this Defendant told Plaintiff that he would receive an MRI and medical treatment from Defendant Centurion. However, Plaintiff

13

provides no facts from which the Court can plausibly infer that Defendant Tollet was deliberately indifferent to an excessive risk of harm to Plaintiff, as required to state a plausible claim for violation of the Eighth Amendment based on a denial of medical care. *Estelle*, 429 U.S. at 104–05; *Farmer*, 511 U.S. at 837. Accordingly, Defendant Tollet is also **DISMISSED**.

### E. Doe Defendants

Plaintiff's complaint also does not contain any factual allegations from which the Court can plausibly infer that any Doe Defendant was personally involved in any violation of his constitutional rights. Moreover, filing a complaint does not commence a civil action against an unidentified party. *See Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *5 (E.D. Tenn. Nov. 4, 2009) ("A civil action cannot be commenced against a fictitious party such as an unknown John Doe." (citing *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968))). Instead, "until an amendment adding additional defendants has been permitted by the court," allegations against unknown defendants "are merely 'surplusage[.]'" *Dunn v. Paducah Int'l Raceway*, 599 F. Supp. 612, 613 n.1 (W.D. Ky. 1984) (citation omitted).[3] Accordingly, the Court will not otherwise address Plaintiff's allegations against Doe Defendants.

---

[3] It also appears that any attempt from Plaintiff to amend the complaint to name the Doe Defendants at this point would be untimely. Specifically, district courts apply state statutes of limitations § 1983 claims. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005). Tennessee applies a one-year statute of limitations to § 1983 actions. *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012); Tenn. Code Ann. § 28-3-104(a)(3). And well-established Sixth Circuit case law provides that Plaintiff's failure to name the Doe Defendants prior to expiration of the statute of limitations for his claims bars those claims, regardless of whether these unnamed individuals had knowledge of Plaintiff's claims within the relevant time period or not. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (finding that "Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)[]"); *Smith v. City of* Akron, 476 F. App'x 67, 69 (6th Cir. 2012) (holding that adding new, previously unknown Defendants in the place of Doe defendants is not equivalent to substituting parties, but rather amounts to addition of parties, and that Rule 15(c) offers no remedy to a plaintiff seeking to do so after the statute of limitations has passed).

14

## V. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motions for leave to proceed *in forma pauperis* (Docs. 6, 9) are **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust accounts is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this memorandum and order and the accompanying judgment order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Plaintiff's motion for injunctive relief (Doc. 11) is **DENIED**;

6. Plaintiff's requests for appointment of counsel are **DENIED**;

7. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

8. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

9. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED. AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

/s/ *Travis R. McDonough*

**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

15